CHIEF JUSTICE SIMPSON
delivered the opinion of the court:
This action was brought under section 4 of chap. 97 of the Revised Statutes, which section reads as follows:
“ The surety of any officer, or of any such fiduciary, or of such other person, or of any person for whom he may be bound by private agreement, may by attachment, restraining order, ne exeat, or other order out of chancery, obtain indemnity, or coerce the principal to give indemnity, by adequate security against his liability as such surety.”
The plaintiff alleged in his petition that he executed a note to the president directors and company of the Bank of Kentucky, jointly with the defendants, William F. Patterson, Elijah Coffey, and William S. Patterson, for the sum of fourteen hundred and fifty dollars, which was due and unpaid; that he was only a surety on said note; that William F. Patterson was the principal; and that although William S. Patterson appeared upon the face pf the note to be a surety for said William F. jointly with the plaintiff, and the defendant, Elijah Coffey, yet he (the plaintiff) “ believed it to be true that he was in fact a principal debtor in said note, jointly with the defendant, William F. Patterson.”
He also alleged that he had no indemnity whatever against loss on account of said suretyship, and he believed he was in danger of loss on account thereof, unless he could secure himself by attachment. He therefore prayed an attachment against the estate of the defendants, William F. and William S. Patterson.
An attachment was issued by the clerk of the court, in con *491 formity with the prayer of the petition, which attachment was levied, and thereupon the defendants executed such a bond as the law requires.
The plaintiff subsequently filed an amended petition, in which he alleged that he had paid the debt to the bank, since the commencement of the action, and prayed for a judgment against the Pattersons for the full amount thereof.
No answer was filed by the defendants, but they moved the court to discharge the attachment, on the ground that it had been improperly awarded and issued.
On the trial the court overruled the motion to discharge the attachment, rendered a judgment for the full amount of the debt against both William F. and William S. Patterson, and adjudged that the bond which had been executed to obtain a, return of the property attached, should stand as a security for the payment of the judgment. To reverse that judgment the Pattersons prosecute this appeal.
On behalf of the appellants it is contended that the allegations of the petition did not authorize a judgment against William S. Patterson for the full amount of the debt, and that the attachment was improperly issued by the clerk of the court, without an order of the judge directing it to issue, even if the provision of the Revised Statutes under which the action was brought is still in force. But it is also contended that this provision of the Revised Statutes has been repealed by the Civil Code, and that the whole proceeding was unauthorized and illegal.
The plaintiff did not allege in his petition that he was the surety of William S. Patterson, or that William S. Patterson was one of the principal debtors in the debt due to the Bank of Kentucky. The only allegation he made on the subject was that he believed it to be true that William S. Patterson was in fact a principal debtor in said note jointly with the defendant, William F. Patterson. Now this allegation was wholly immaterial. The defendant was not bound to controvert it; for although he might have been able to deny that he was a principal in the note, yet he could not have denied, nor *492 was he required to deny, that the plaintiff believed that such was the fact.
The rules of pleading require that the facts relied upon should be directly and positively alleged, and not stated by way of argument, inference, or belief. Under the Code of Practice, a party is only required to verify his pleadings, by an affidavit, to the effect that he believes the statements thereof to be true. But the statements in the pleadings must be made in direct and positive terms, so that if it be necessary for the other party to respond to them, he may be enabled to do so in terms equally direct and positive.
The allegations in the plaintiff’s petition did not therefore authorize a judgment against William S. Patterson for the full amount of the debt which the plaintiff had paid.
If the section of the Revised Statutes under which this action was brought be in force, still the clerk of the court had no power to order the attachment, but it should have been ordered by a judge. This case is not embraced by the class of cases in which the clerk of the court in which the action is brought is authorized, under the Civil Code, to make an order of attachment. lie can only make such an order in the cases specified in section 222 of the Code.
It is also apparent, from the language used in this provision of the Revised Statutes, that the proceeding which it contemplated was to be a suit in equity, and the attachment, or other order which might be obtained, was to issue out of chancery. An order of court, or of a judge authorized to grant attachments, was therefore indispensably requisite to enable the clerk to issue the attachment. Having been issued without any such order, it was unauthorized and illegal, and the motion to discharge it should have been sustained.
There is, however, a still a more radical objection to this proceeding than the one just noticed. Neither the allegations in the petition, nor the statements in the affidavit made by the plaintiff, authorized an order of attachment to be granted, either by a judge or by the clerk of the court in which the action was brought. None of the grounds enumerated in the Civil Code upon which an attachment is allowed were set forth *493 or relied on, either in the petition or the affidavit filed by the plaintiff; but the fact that he was a surety in the debt, without an indemnity, was alone relied upon as a ground for the attachment.
By the Code of Practice, as amended since the adoption of the Revised Statutes, it is enacted, that all statutes and laws previously in force in this state, in any case provided for by the Code, or inconsistent with its provisions, are repealed and abrogated. (Sec. 875.) And it is thereby also enacted that the Code of Practice in civil actions, as amended, shall regulate the procedure in all civil actions and proceedings in the courts of this commonwealth, and that all laws coming within the pui’view of its provisions shall be repealed. (Section 748.)
The inquiry then arises, is a case like the present provided for by the Code ? If it be, it is apparent that this proceeding could not have been maintained under the foregoing section in the Revised Statutes, even had the attachment been ordered by a judge, but should have been carried on under the provisions of the Code of Practice.
Under the provisions of sections 728,729, and 730 of the Code, a surety can maintain an action against his principal to compel him to discharge the debt or liability for which the surety is bound, after the same has become due. In such action the surety may obtain any of the provisional remedies mentioned in title 8, upon the grounds and in the manner therein prescribed.
Before the debt is due, a surety may maintain an action against his principal to obtain indemnity against the debt or liability for which he is bound, whenever any of the grounds exist upon which, by the provisions of chapters 1 and 3, of title 8, an order may be made for arrest and bail, or for an attachment.
It is argued that, by these provisions, the surety is only enabled to coerce indemnity in cases where the debt is not due. He can compel the principal to pay the debt after the same has become due, but he cannot obtain indemnity, and therefore had a right in this case, the debt being due when he commenced his action, to his remedy under the Revised Statutes.
*494 There is no foundation whatever .for the distinction which is attempted to be made, between the right of a surety to obtain indemnity, and his right to compel his principal to pay the debt after it has become due. Its payment will operate as the most ample indemnity, by discharging the surety from all liability. To indemnify, or save the surety harmless, is the object designed to be accomplished by the Code of Practice. The same object was contemplated by the provision referred to in the Revised Statutes. In a proceeding under either the result would be precisely the same. Under the Code of Practice, the property attached, or the bond which may be executed to procure its return to the defendant, will stand as a security for the payment of the debt, and operate as an indemnity for the surety until the payment be made. Any security which might have been obtained by a proceeding under the Revised Statutes would have operated in the same manner, and stood as an indemnity for the surety until the debt was paid by his principal. The surety in such a proceeding would have had a right to compel his principal to pay the debt; and whether he required it to be done or not, such a proceeding would have produced that result, almost invariably.
It seems to be conceded, that before the debt is due, a surety has a complete remedy against his principal under the provisions of the Code of Practice, and that in such a case the action must be brought, and the proceedings had under the Code, inasmuch as it is a case provided for by it. But it is said that after the debt is due the remedy of the surety is not complete, that he can only compel the payment of the debt, and thereby exonerate himself from liability, and is not allowed the privilege of continuing bound for the debt, and coercing an indemnity against such a liability. This might afford some cause for complaint on the part of the debtor; but even such a complaint by him would be groundless, for if the creditor were willing to grant further indulgence, it might be obtained by giving some other person as surety on the debt, instéad of indemnifying the surety already bound therefor by giving to him counter security. But certainly the surety has no right to contend that his remedy is incomplete, because he is *495 not permitted to remain bound, and coerce an indemnity from his principal. He can, under the remedy afforded by the Code of Practice, coerce an indemnity which will be effective until he be entirely discharged from all liability, by the payment of the debt. The right to do this will always enable him, if the parties desire it, and the debtor be able to do it, to obtain a continuing indemnity, upon an agreement on his part to continue his liability.
In any and every aspect of the case, therefore, the remedy which is furnished the surety by the Code of Practice after, as well as before the debt is due, is full and ample. In either ease he can coerce an indemnity from his principal, when any of the grounds exist which authorize a proceeding for that purpose. As, then, this case is provided for by the Code, the plaintiff had no right to proceed, and cannot maintain an action, under the foregoing section of the Revised Statutes. '
Wherefore, the judgment is reversed, and cause remanded with directions to sustain the motion to discharge the attachment, and to allow the plaintiff to amend his petition, and for further proceedings not inconsistent with this opinion.