Commonwealth v. Watts.

CASE 73—FORFEITED BAIL BOND—DECEMBER 7.

$\begin{vmatrix} 84 & 537 \\ 100 & 654 \end{vmatrix}$

## Commonwealth v. Watts.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. NEITHER THE CIVIL NOR CRIMINAL CODE REPEALS THE GENERAL STATUTES, OR ANY PART THEREOF, except where the Code has provided "a mode of procedure," by which the law upon a particular subject, as contained in the General Statutes, may be fully and effectually enforced, the act adopting the Civil Code and the act adopting the Criminal Code each providing for the repeal of only such statutes as are "within the purview" of its provisions. And where some of the provisions of the General Statutes upon a particular subject are within the purview of the Code, and others are not, if to hold the former repealed and the latter not, leads to an absurdity, none of the provisions upon the subject are to be held repealed.

Neither section 22 nor section 23 of article 1, chapter 47, General

Statutes, providing for the issual of a search warrant for the detection of gaming tables, has been repealed by the Criminal Code.

2. GAMING TABLES—SEARCH WARRANTS.—The provision authorizing a "judge or justice of the peace" to issue the search warrant, was intended to authorize *any* judge to issue the warrant, and can not be restricted, in its application, to judges of county, city and police courts. Therefore, it empowers the judge of the Louisville Law and Equity Court to issue the warrant, and the officer making the arrest in obedience to the warrant is authorized to bring the offender before the judge to be dealt with as provided in section 23.

3. A STATUTE PROVIDING FOR THE ISSUAL OF A SEARCH WARRANT need not recite the conditions and restrictions of the Constitution as to " seizures and searches."

4. THE FACT THAT A BOND IS TAKEN IN OPEN COURT, instead of before the judge in person, as required by the statute, does not impair its obligatory force.

B. W. DUKE AND JOHN B. BASKIN FOR APPELLANT.

1. The proceedings contemplated by sections 22 and 23 of article 1, chapter 47, of the General Statutes, are not of that character which the Criminal Code was intended to repeal, or in anywise affect. They are meant for special offenses, and are intended to be auxiliary to the general cause of criminal procedure. The statute of " Crimes and Punishments " is full of such provisional, auxiliary proceedings intended to aid the execution of penal laws in particular cases. (Criminal Code, sections 1, 2 and 3; Gen. Stats., chap. 29, art. 17, sec. 4; art. 19, sec. 2; art. 24, sec. 4; art. 26, sec. 7; art. 27, secs. 6 and 7.)

2. The word "purview," as used in the 3d section of the Criminal Code, was not intended to embrace the whole wide topic and general matter under discussion, and every thing connected with it, but means simply the particular subject or subjects mentioned in the act, and is confined to the matter specifically set forth. Therefore, where the Code makes no provision for search, the subject of search warrants is not within the purview of the Code. (Grigsby v. Barr, 14 Bush, 339.)

3. Sections 22 and 23 of article 1, chapter 47, General Statutes, refer to a "judge," and not a " court," while the Code regulates the proceedings in " courts " only.

4. A search warrant which conforms to the *tenor* of the provision of the Bill of Rights (section 11) is valid; all that is required is that the statutory terms shall harmonize in meaning with the constitutional provision, so that there shall be no conflict. (Reed v. Price, 2 J. J. M. 44.

5. The case of Fisher v. McGirr, 1 Gray, 1, explained, and the differences between the Massachusetts statute and the Kentucky statute pointed out.

Commonwealth v. Watts.

.JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

August 29, 1885, the judge of the Louisville Law and Equity Court issued a warrant directed to the proper officer commanding him to enter and to search a house therein described for the detection of certain gaming tables and implements used for gambling, also described, and to seize and bring the same, and likewise the bodies of Wetzel and Jenkins, before him, to be disposed of and dealt with according to law. The sheriff, to whom the warrant was delivered, made a return thereon that he had executed it by arresting Wetzel, who gave bond for his appearance before said judge, but found no gambling implements of any kind described in the warrant. Afterwards, the following order was made: "At a court held for the Louisville Law and Equity Court, the defendant Wetzel, * * * appeared at the bar of this court in pursuance to his recognizance, and the court being non-advised, * * * orders that the defendant Wetzel be held to appear before the next September term of the Jefferson Circuit Court, on the 7th day of September, 1885, upon said charge of setting up, keeping and exhibiting a keno bank and gaming table, and that he be allowed to give bail in the sum of $600 for his appearance in said court at said time, and to be of good behavior for the period of one year from this date." And thereupon Wetzel executed the bond mentioned and described in the order. September 9, an indictment was found against him in the Jefferson Circuit Court for the offense of setting up, keeping and exhibiting a keno bank, and on the same day an order of that court was entered forfeiting the bail bond

executed by him before the judge of the Louisville Law
and Equity Court, and for a summons.to issue against
him. But two days thereafter he entered his appear-
ance and filed a response to the summons, in which he
set up as a defense that the judge of the Louisville Law
and Equity Court had no authority to issue the warrant
for either a search to detect gaming tables or for his ar-
rest ; nor jurisdiction to either investigate the charge or
to hold him over, and that consequently the bond was
void. And the circuit court having overruled the de-
murrer to the response, and dismissed the proceeding
on the forfeited bail bond, the Commonwealth prose-
cutes this appeal.

If the judge of the Louisville Law and Equity Court
had the authority exercised by him in this case, it ex-
isted in virtue of sections 22 and 23, article 1, chapter
47, General Statutes, which are as follows :

" § 22. A judge or justice of the peace may, by his war-
rant, cause any house or building to be searched, by
night or by day, for the detection of gaming tables ;
and if admission be not given on demand made, the
officer, or other person in charge of the warrant, shall
force an entrance, seize the table and all other imple-
ments used therewith, and all money or other things
staked or exhibited thereon, and arrest the keeper
thereof.

" 23. Any setter-up or keeper of a gaming table may
be required, by a judge or justice of the peace, to give
security in six hundred dollars for his appearance at
the next circuit court of the county to answer the
charge, and to be of good behavior for one year ; and
on failure, shall be committed to prison until after the

next term of court, or until the security is given, and if, after giving the security, he shall, within one year, keep or permit any such table to be used, it shall be deemed a breach of his recognizance."

If the two sections quoted are valid and in force, it is clear that the judge of the Louisville Law and Equity Court has authority to issue the warrant provided for in section 22; for the term " a judge," which is the equivalent of "any judge," comprehends an entire class, and can not, without distorting its meaning, be restricted in its application to judges of county, city and police courts, who, together with mayors, chairmen of trustees of towns, and justices of the peace, are called in the Criminal Code "magistrates," and alone empowered thereby to issue warrants of arrest.

To construe section 22 so as to withhold authority to issue the warrant therein provided for from the judge of the Louisville Law and Equity Court, necessarily, and in defiance of the explicit language used, excludes as well judges of the circuit, criminal and common pleas courts.

Assuming, as we think must be done, that the judge in this case had, under section 22, authority to issue the warrant, it consistently and logically follows that the officer having appellee under arrest, in obedience to the warrant, was authorized to bring him before the judge to be dealt with as provided in section 23, which involved the legal necessity of an examination of the charge. For it would not be a reasonable supposition that the Legislature intended to empower a judge to require a person arrested for setting up and keeping a gaming table to give security for his appearance at the

circuit court, and to be of good behavior for one year, without a previous examination of the charge. · But be that as it may, section 23 does, in terms, authorize a judge or justice of the peace to require and to take such bonds, and, in our opinion, the judge who issued the warrant and took the bond in this case, is not excepted from, but included by, the terms of the statute.

Section 11, article 13, of the Constitution, does not prohibit, but impliedly recognizes the general power of the Legislature to enact laws authorizing "seizures and searches," it being, however, therein provided "that the people shall be secure in their persons, houses, papers and possessions from *unreasonable* seizures and searches, and that no warrant to search any place, or to seize any person or thing, shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation." And this power has been exercised by the Legislature from the beginning, and decided by this court to clearly exist. (Reed v. Rice, 2 J. J. M., 46.)

But it was not necessary to the validity of section 22 for it to contain a recital of the conditions and restrictions of the Constitution just quoted ; for, being enacted subject thereto, its enforcement of necessity must be in harmony therewith, whether so expressly provided in the statute itself or not.

In this case the warrant was in fact issued upon probable cause, supported by oath, and the place to be searched and the persons and things to be seized were described with reasonable certainty ; and thus it was demonstrated that the statute can be properly and effectually enforced, and the requirements of the Con-

stitution at the same time complied with.    There could,
it seems to us, be no better test of the validity of a stat-
ute.

The principal question in this case is, whether sec-
tions 22 and 23 we are considering have been repealed
by the act adopting the present Criminal Code, passed
subsequent to the General Statutes.

The first and third sections of that act are as follows:

. "§ 1.  That the provisions of this act shall regulate
the proceedings in all prosecutions and penal actions in
all the courts of this Commonwealth, from and after
the first day of January, 1877, and shall be known as
'The Code of Practice in Criminal Cases.'

"§ 3.  That all laws coming within the purview of
this act shall become repealed when this act goes into
effect, except as provided in the preceding (third) sec-
tion."

In Broadus v. Broadus, 10 Bush, 308, the question
arose whether a provision of the Revised Statutes relat-
ing to the mode of trying and disposing of will cases
had been repealed by the act adopting the General
Statutes, and it was said: "When a section in the Re-
vised Statutes has been omitted in the General Statutes,
or any change made, however slight, in the general
law, the whole law as found in the Revised Statutes
on that subject must be considered and treated as re-
pugnant to the provisions of the General Statutes, as
in construing one section of a general law the object
and intention of the whole law must be considered.    It
never was contemplated by the revisors, or by the
Legislature in adopting these statutes, that both the
old and new statutes should be considered together in
determining what the law is."

When it is considered that the Revised Statutes was intended to be, and treated while in existence as a complete system of laws, as a substitute for, not any particular or given number of provisions, but the whole of which the General Statutes was adopted, it becomes apparent that the act establishing the new operated to abrogate the old system.

Upon the same principle, and according to the same rule of construction, the acts adopting the present Civil and Criminal Codes had the effect in each case to absolutely repeal the acts adopting the former. But while the General Statutes is intended to be a system of general laws distinct from the two Codes of Practice, the line of demarkation has not been rigidly preserved by the Legislature, even if it was entirely practicable to do so. On the contrary, there are provisions in the General Statutes, the appropriate places of which are in one or the other Code, that have never been repealed, but been in force since the adoption of the Revised Statutes; while there are provisions in the Civil, if not Criminal Code, which should be parts of the General Statutes. It was, therefore, not intended that either the act adopting the Civil or the one adopting the Criminal Code should repeal the General Statutes as a whole or any part thereof, except such as, in the language of the repealing sections of both, comes within the purview of the acts respectively.

In Payne v. Connor & Adams, 3 Bibb, 181, this court defined "purview" as follows: "The meaning usually attached to this term by writers on law seems to be the enacting part of a statute in contradistinction to the preamble; and we think the provision of the act repeal-

ing all acts or parts of acts coming within its purview should be understood as repealing all acts in relation to all cases which are provided for by the repealing act; and that the provisions of no act are thereby repealed in relation to cases not provided for by it."

The rule there laid down has been since approved and applied in Patterson v. Caldwell, 1 Met., 489, and Grigsby v. Barr, 14 Bush, 330, in determining the effect of the repealing section of the former Civil Code on pre-existing general laws in relation to practice and procedure in civil cases, and it is equally applicable in construing the repealing section of the Criminal Code.

In the language of Patterson v. Caldwell, "the inquiry then arises, is a case like the present provided for in the Code?" Or, varying the question so as to comport with the language used in Grigsby v. Barr, has the Criminal Code provided "a mode of procedure" by which the law, as contained in sections 22 and 23, may be fully and effectually enforced?

Section 22 empowers a judge or justice of the peace, by warrant, to cause a search for the detection and the seizure of gaming tables and implements, and the arrest of the keeper at the same time and under the same warrant.

If nothing more than the arrest was contemplated by that section, it would technically come within the purview of the Criminal Code, which provides fully for the arrest of persons charged with public offenses. But there is no authority, express or implied, given by the Code to any officer to cause, by warrant or otherwise, a search for and seizure of gaming tables and implements, nor does it provide any method of procedure by which

such search and seizure may be made. The object of the Criminal Code being to provide modes for preventing and prosecuting public offenses, should never be so construed as to defeat that object. But if one part of section 22 be held as in force, and the other repealed by the Criminal Code, it would result that the two things which the Legislature evidently intended, and which the certain and complete execution of the law require to be done concurrently and under the same warrant, would have to be done, if at all, under the authority of different officers, by different process and at different times. We are satisfied the Legislature never intended that section 22 should be thus mutilated, and the efficiency of the statute thereby impaired.

So much of section 23 as authorizes a judge or justice of the peace to require any setter-up or keeper of a gaming table to give security for his appearance at the next circuit court of the county to answer the charge, is within the purview of the Criminal Code, provision being made thereby for taking bail bonds. But that section authorizes the judge or justice of the peace to require the person charged to further undertake, at the same time, to be of good behavior for one year; and it is therein provided that if, after giving the security, he shall, within the year, keep or permit any such table to be used, it shall be deemed a breach of his recognizance.

No authority whatever is given by the Criminal Code to any officer to require or to take a bond for good behavior in the meaning of section 23; nor, for the breach therein mentioned, to adjudge a forfeiture of such bond. That section should, in our opinion, like section 22, be regarded, as the Legislature intended it to be, entirely

unaffected by the repealing section of the Criminal Code; for the attempt to enforce it partly in the manner and by the officer therein provided, and partly under the Code, would involve the absurdity of two examinations and two bonds, before two officers, each having but a fragment of authority, when the proper enforcement of the statute requires but one officer, with full authority to issue the warrant, hold the examination, and take the bond required.

The offense of gaming is deemed of such importance as to be treated in the General Statutes under a separate title, and we are satisfied that the Legislature did not intend that the provisions for the suppression of the vice, which are exceptional and peculiarly stringent, yet consistent and dependent on each other, should be repealed as a whole or in part by the Criminal Code.

It appears that the bond in this case was taken in open court, instead of before the judge in person. But that fact does not impair the obligatory force of the bond.

In our opinion, the demurrer to the response should have been sustained; and for the error of the court in overruling it the judgment is reversed, for further proceedings consistent with this opinion.