## Youman v. Commonwealth.

(Decided October 5, 1920.)

### Appeal from Hardin Circuit Court.

1. Searches and Seizures—Constitutional Law.—Under section 10 of the Constitution providing that "the people ˙shall be secure in their persons, houses, papers and possessions from unreasonable search and seizure, and no warrant shall issue to search a place or seize a person or thing without describing it as nearly as may be, nor without probable cause supported by oath or affirmation," it is unlawful for an officer to search the premises or other things of a suspected offender, unless the officer has a search warrant authorizing the search.

2. Searches and Seizures—Search of Person—Constitutional Law.—Subject to the exception that an arresting officer has the right to search the person of a prisoner lawfully arrested, and take from his possession property connected with the offense, or any weapon or thing that might enable the prisoner to escape or do violence, it is as great a violation of the Constitution for an officer to search a person or baggage carried about by him, without a warrant authorizing it, as it is to search his premises.

3. Searches and Seizures—Search of Arrested Person.—No search of the person or personal baggage or personal belongings, or seizure of the articles found thereon or therein, can be made without a search warrant unless and until the offender has first been taken into custody, under a lawful arrest.

4. Searches and Seizures—Arrest Without a Warrant.—If an officer sees an article or implement, that it is unlawful to have possession of in the possession of any person, or in felony cases, when the officer has reasonable grounds for believing that the person has committed a felony, he may without a warrant of arrest

make the arrest and take possession of the unlawful things on the person arrested, but he has no lawful right to search on suspicion, either the person or baggage or personal belongings of a suspected person.

5. Searches and Seizures—Evidence—Evidence Obtained by an Unlawful Search Incompetent.—Evidence obtained by an officer in making an unlawful search is incompetent, and objection to its introduction may be made when it is offered to be introduced in the trial.

6. Searches and Seizures—Return of Seized Articles to Person From Whom They Were Taken.—The court in which the case is pending, when it appears that the property seized was taken in the course of an unlawful search, should, on motion, order it to be restored to the person from whom it was unlawfully taken.

H. L. JAMES for appellant.

CHARLES I. DAWSON, Attorney General, and W. T. FOWLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Reversing.

In 1919 there was in force in this state a statute providing that it should be unlawful for any person "to have in his possession spirituous, vinous, or malt liquors, for the purpose of selling them." Under this statute the county judge of Hardin county, in July, 1919, issued a warrant against Roy Youman, the appellant, charging him with the offense "of having in his possession spirituous, vinous, and malt liquors, for the purpose of sale," in violation of the statute quoted, and this warrant was placed in the hands of the sheriff of Hardin county commanding him to forthwith arrest Youman, and bring him before the judge of the Hardin county court to be dealt with according to law.

Armed with this warrant of arrest the sheriff, accompanied by other officers, went to the premises and residence of Youman for the purpose of executing the warrant. They did not succeed in arresting Youman, but while on the premises concluded to and did make a search for the purpose of discovering, any liquor that might be found thereon. Pursuant to this purpose they searched the premises and buildings, and found under the floor of a small house nearby the residence of Youman, several gallons of whiskey, which they took and carried away without the knowledge or consent of Youman or Mrs. Youman and deposited it for safe-keeping in the jail of Hardin county.

It is admitted that neither the sheriff nor any of the officers who were with him had a search warrant authorizing them to search the buildings or premises although there was in force at that time a valid statute providing that "in any county, city, town, district or precinct where the sale of intoxicating liquors has been prohibited, whether by special act of the general assembly or by vote of the people under the local option law of this state, any judge or justice of the peace, when affidavits of three or more reputable persons are filed with him describing the premises as nearly as may be, where intoxicating liquors are sold or suspected of being sold, may by his warrant cause any house or building or other place to be searched by night or by day for the detection of any intoxicating liquors which are kept there for the purpose of sale, . . . and the judge, justice of the peace or court trying such offender or offenders shall adjudge the intoxicating liquors so seized contraband and confiscate the same at once unless notice of an appeal or an appeal of the case be taken."

Some time after this, Youman surrenderd to the sheriff, and later was put upon his trial in the circuit court under the warrant issued for his arrest.

On the trial of the case the court, over the objection of counsel for Youman, permitted the sheriff and the other officers to testify concerning their search of the premises and the discovery, seizure and disposition of the liquor. It may also be here. stated that the liquor was purchased by Youman or his wife at a time when, and at a place where it was lawful to sell and buy intoxicating liquor, but it was unlawful to have it in possession for purposes of sale, as charged in the warrant. So that the only offense Youman was guilty of was that charged in the warrant and it must be conceded that the evidence of the sheriff and the other officers describing the place where and the manner in which they searched for, and found this liquor, was very material and if incompetent, highly prejudicial to Youman.

After the evidence had been introduced, the court instructed the jury in substance that if they believed, beyond a reasonable doubt, that Youman had in his possession for the purpose of sale spirituous liquors at the time testified to by the sheriff and others they should find him guilty and fix his punishment at a fine in any sum not less than $50.00 nor more than $100.00 and at confinement in the county jail not less than ten days. Under the evidence and these instructions, the jury found You-

man guilty and fixed the penalty at a fine and imprisonment.

When the jury returned this verdict and before judgment was entered thereon, counsel for Youman moved the court to release and turn over to Birdie Youman, the wife of Roy Youman, the whiskey taken as before stated and then in possession of the jailer of Hardin county, there being evidence that the whiskey was owned by her, but this motion was overruled by the court and thereupon sentence against Youman was pronounced in conformity with the verdict and it was adjudged pursuant to a statute that the whiskey be confiscated and poured, by the sheriff of the county, into a sewer, thus completely destroying the same.

Youman suspended by an appeal bond the execution of the judgment, and on this appeal asks a reversal of it, upon the grounds, first, that the court committed error in permitting the sheriff and the other officers to give in evidence the facts relating to the search for and seizure of the whiskey, and second, in refusing to order it returned to Mrs. Youman.

But before considering the competency of the evidence objected to or the ruling in respect to the return of the whiskey that is complained of, attention will be directed to section 10 of the state Constitution declaring that among the "inherent and inalienable rights of the citizen" is the principle that "the people shall be secure in their persons, houses, papers, and possessions from unreasonable search and seizure; and no warrant shall issue to search a place or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

That it is a flagrant violation of this section of the Constitution, which is only applicable to public officers, for an officer of the law, without a valid search warrant, to search the premises and possessions of an alleged offender, for the purpose of discovering evidence against him, or to seize or take possession of any species of property discovered in such unlawful search, or to search his person until after he has been lawfully arrested, has been made so plain by the words of the section, and is so well known to people generally and has been so often decided by the courts of the country, that it would appear to be unnecessary to refer to any authority on the subject.

But notwithstanding this general knowledge of the prohibition against unlawful search it is not an uncom-

mon thing in this state for officers of the law, urged in some cases by popular clamor, in others by the advice of persons in a position to exert influence, and in yet others by an exaggerated notion of their power and the pride of exploiting it, to disregard the law upon the assumption that the end sought to be accomplished will justify the means, and therefore no attention need be given to constitutional authority when public approval will commend the unlawful conduct.

And as there appears to be a growing public sentiment against the observance of or obedience to any constitutional restraint that obstructs or stands in the way of the desires of those who seek to accomplish their purposes regardless of Constitution or laws, we will be at some pains to set down in this opinion the constitutional provisions protecting the citizen against unlawful search and seizure and a few of the principal authorities in which the force and effect of these provisions have been explained and expounded.

In article 4 of the Constitution of the United States it is declared that: "The rights of the people to be secure in their persons, papers, houses and effects against unreasonable searches or seizures shall not be violated, and no warrant shall issue unless upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

It will be observed that there is no substantial difference between the wording of the clause in the federal and state Constitutions, and it is therefore very proper that we should refer to some opinions of the Supreme Court of the United States for the purpose of illustrating the high regard in which these provisions are held by that great tribunal.

In Boyd v. United States, 116 U. S. 616, 29 Law Ed. 746, Justice Bradley, in speaking for the court in a case in which the admissibility of evidence secured by means of an unlawful search and seizure was challenged, said, in speaking of the incalculable value to the citizen of the section of the federal Constitution referred to and in commending what was said by an English judge on the subject, that "the principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employees of the sanctity of a man's

home and the privacies of life. It is not the breaking of his doors and the rummaging of his drawers that constituted the essence of the offense, but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offense; it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods is within the condemnation of that judgment. . . . Now it is elementary knowledge that one cardinal rule of the court of chancery is never to decree a discovery which might tend to convict the party of a crime, or to forfeit his property. And any compulsory discoverey by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime or to forfeit his property is contrary to the principles of a free government. It is abhorrent to the instincts of an American. It may suit the purposes of despotic power; but it cannot abide the pure atmosphere of political liberty and personal freedom.''

In Weeks against United States, 232 U. S. 383, 58 Law Ed. 652, the Supreme Court of the United States again said, speaking through Justice Day, that ''The effect of the 4th Amendment is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the federal Constitution, should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such

fundamental rights." See further Bram v. United States, 168 U. S. 532, 42 Law Ed. 568, 24 R. C. L. 703.

In Cooley's Constitutional Limitations, p. 367, this is also said: "Near in importance to exemption from any arbitrary control of the person is that maxim of the common law which secures to the citizen immunity in his home against the prying eyes of the government, and protection in person, property, and papers, against even the process of the law, except in a few specified cases. The maxim that 'every man's house is his castle' is made a part of our constitutional law in the clauses prohibiting unreasonable searches and seizures, and has always been looked upon as of high value to the citizen."

"For the service of criminal process, the houses of private parties are subject to be broken and entered under circumstances which are fully explained in the works of the criminal law, and need not be enumerated here. And there are also cases where search warrants are allowed to be issued, under which an officer may be protected in the like action. But as search warrants are a species of process exceedingly arbitrary in character, and which ought not to be resorted to except for very urgent and satisfactory reasons, the rules of law which pertain to them are of more than ordinary strictness; and if the party acting under them expects legal protection, it is essential that these rules be carefully observed. In the first place, they are only to be granted in the cases expressly authorized by law, and not generally in such cases until after a showing made before a judicial officer, under oath, that a crime has been committed, and that the party complaining has reasonable cause to suspect that the offender, or the property which was subject to the instrument of the crime, is concealed in some specified house or place. And the law, in requiring a showing of reasonable cause for suspicion, intends that evidence shall be given of such facts as shall satisfy the magistrate that the suspicion is well founded; for the suspicion itself is no ground for the warrant except as the facts justify it."

This court, although it has had occasion in Reed v. Rice, 2 J. J. M. 44; Commonwealth v. Watts, 84 Ky. 537; Madden v. Meehan, 151 Ky. 220; Clarke v. Hampton, 163 Ky. 698; Weaver v. Ficke, 174 Ky. 432; and Manning v. Roberts, 179 Ky. 550, to refer to section 10 of the Constitution, it was not necessary in any of these cases except Manning v. Roberts, which will be later noticed, that the court should consider the effect of this section,

but there cannot be doubt that it should be given the same broad and protective meaning ascribed to article 4, of the federal Constitution, by the Supreme Court of the United States.

It will be observed that the Constitution secures the people against "unreasonable search and seizure," and from the use of the word "unreasonable" it might be thought that a reasonable search and seizure, or one that was not unreasonable, would be allowed without a search warrant. But there is no foundation for this construction. The section does not permit any kind or character of search of houses, papers, or possessions, without a search warrant.

In Boyd v. United States, 116 U. S. 616, 29 Law Ed., there will be found an interesting and instructive historical account of the reasons why the word "unreasonable" was introduced into the section in the federal Constitution, and these same reasons doubtless caused it to be put in the section in the first Constitution of this state, of which the present section is a copy. From the opinion in the Boyd case it will be seen that the prohibition against "unreasonable" search and seizure was inserted to meet a practice that had grown up in Revolutionary times, and to protect citizens not only against this practice but against all searches and seizure of their property without a search warrant.

This constitutional provision, which is broad enough to and does include every article and species of property, was intended to afford the individual, however humble he may be, protection and security against any unlawful invasion of his premises or possessions by officers of the law, assuming to act under color of their office, and no officer has a lawful right to search on suspicion or without a warrant expressly authorizing it the possessions or premises of another, or anything found therein or thereon, such as boxes, barrels, drawers, closets, or other places in which articles of property of any kind may have been placed by the owner; and this absolute security against unlawful search or seizure exists without reference to the guilt or innocence of the person whose property or premises is searched. The mere fact that he is guilty or that there may be reasonable grounds to believe that he is guilty of the charge preferred against him or the offense of which he is suspected, will afford no excuse or justification for an unlawful search or seizure.

And this broad protection against unlawful search and seizure applies with equal force to the person, and,

subject to the exception that an arresting officer has the right to search the person of a prisoner lawfully arrested and take from his person and hold for the disposition of the court any property connected with the offense for which he is arrested that may be used as evidence against him, or any weapon or thing that might enable the prisoner to escape or do some act of violence, it is as great a violation of the Constitution for an officer to search a person or baggage carried about by him without a warrant authorizing it, as it is to search his premises. 2 R. C. L., p. 467; 5 Corpus Juris, page 434; Ex parte Hurn, 92 Ala. 102, 13 L. R. A. 120; State v. Clausemeier, 154 Ind. 599, 50 L. R. A. 73; Getchell v. Page, 103 Maine 387, 18 L. R. A. (N. S.) 253; Commercial Exchange Bank v. McLeod, 65 Iowa 665, 54 Am. Rep. 36; Hubbard v. Garner, 115 Mich. 406, 69 Am. St. Rep. 581; Hulker v. Hennessy, 141 Mo. 527, 39 L. R. A. 165; State v. Mausert, 88 N. J. Law 286, 1916C L. R. A. 1014; State v. Turner, 82 Kan. 787, 136 Am. St. Rep. 129.

In this connection it should further be said that as the possession of intoxicating liquors for the purpose of sale in violaton of the law was a public offense, it is not to be doubted that a search warrant in the manner and form authorized by section 10 of the Constitution might be issued conferring authority on the officer to search the premises, person, baggage and personal belongings of an alleged offender; or that evidence that liquor found under such a warrant would be competent, as well as the evidence of the officers describing the place where they found it. 3 R. C. L. 154; Getchell v. Page, 103 Maine 387, 18 L. R. A. 253; People v. Campbell, 160 Mich. 108, 34 L. R. A. (N. S.) 58; State v. Mausert, 88 N. Jer. Law 286, 1916C L. R. A. 1014.

But no search of the person or personal baggage or personal belongings, or seizure of any articles found thereon or therein can be made on suspicion or without a search warrant unless and until the offender is first taken into custody under a warrant of arrest or his arrest without a warrant is authorized by section 36 of the Criminal Code, providing that an officer may make an arrest without a warrant " . . . when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony." But if a person is lawfully taken into custody, the right to search him and seize articles in his possession is allowed for the purposes before stated.

It follows that under this section of the Code, when an offense is committed in his presence, as it is when the officer sees in the possession of any person an article or implement that it is unlawful to have possession of, he may arrest without a warrant, and so in felony cases when the officer has reasonable grounds for believing that the person arrested has committed a felony, he may without a warrant of arrest, place the person so offending in custody under the provisions of the Code, *supra*, and in such states of case he may take possession of the unlawful things found on or in the possession of the person arrested. State v. Quin, — S. C. —, 3 Am. Law Rep. 1500.

The case of Manning v. Roberts, 179 Ky. 550, furnishes an illustration of the right of an officer to search without a warrant the personal baggage of an offender against the law when the offense is committed in his presence. In that case Roberts, a game warden, found Manning hunting and saw the feathers and legs of birds sticking out of the saddle bags in the possession of Manning. He demanded to see the license of Manning authorizing him to hunt, and when the license of Manning was not exhibited Roberts took possession of the saddle bags and counted the birds therein. In a suit by Manning against Roberts to recover damages for an alleged assault and trespass, there was a judgment in the lower court for Roberts, and in affirming that judgment this court, after reciting the facts stated and the law under which the game warden acted, said:

"So the case in so far as Roberts' liability is concerned comes to this: He, as game warden, found appellant violating the law in hunting without a license and having quail in his possession. That fact gave him the right under subsection 13 of the act to seize the birds and carry them before a magistrate for trial and condemnation. Consequently, in seizing the quail Roberts did no more than the statute expressly authorized, and it was not an unreasonable seizure denounced by section 10 of the Kentucky Bill of Rights."

From what has been said it will be seen that the search for and seizure of the whiskey was an unlawful act; and the next question is: was the evidence of the officers describing the search for and seizure of the liquor competent for the purpose of establishing or tending to show that Youman had in his possession whiskey for the purposes of sale in violation of law?

In support of the contention that this evidence was incompetent reliance is had on the constitutional provision forbidding the search for or seizure of articles or property on the premises of or in the possession of another without a search warrant. And the argument is made that under this provision evidence tended to show the guilt of the accused obtained by a search unlawfully made, is not competent to establish the guilt of the accused under a warrant or indictment charging him with the offense of having in his possession the articles that were found in the unlawful search.

Upon this subject, there is much diversity in the authorities; the majority of the cases hold that the court will not stop in the course of the trial to inquire into the manner in which otherwise competent evidence was secured by the Commonwealth, and will permit it to be introduced although it was secured by officers of the law in an unlawful way, for example, where it appears on the trial, as in this case, that the evidence against the accused tending to establish his guilt was obtained by an unlawful search of his premises, the evidence will be admitted. Cases so holding are: State v. Flynn, 36 N. H. 64; People v. Adams, 176 N. Y. 351, 63 L. R. A. 406; Commonwealth v. Dana, 2 Met. (Mass.) 329; State v. Edwards, 51 W. Va. 220, 59 L. R. A. 465; Shields v. State, 104 Ala. 35, 53 Am. St. Rep. 17; State v. Turner, 82 Kan. 787, 136 Am. St. Rep. 29; Williams v. State, 100 Ga. 511, 39 L. R. A. 269; Adams v. New York, 192 U. S. 585, 48 Law Ed. 575. Other cases might be referred to, but these sufficiently illustrate the rule.

But there is another line of cases headed by Weeks v. United States, 232 U. S. 383, 58 Law Ed. 652, holding that where an officer of the law without a search warrant searches the premises of a person suspected of crime, and finds therein articles or things that would aid in establishing his guilt, the evdence so obtained will not be competent if a motion is made in the court in which the prosecution is pending before the commencement of the trial to return the articles seized in the course of the unlawful search, and objection is then and there made to the introduction of the articles as evidence.

Before, however, considering the Weeks case it will be helpful to an understanding of the position of the court to notice what was held by the Supreme Court of the United States, in Adams v. New York, 192 U. S. 585, 48 Law Ed. 575. In that case Adams was convicted in one of the state courts of New York of the crime of hav-

ing in his possession gambling implements. His premises were searched without a warrant and over his protest and in this way evidence was found to establish his guilt. On the trial of the case objection was made to the introduction of the evidence found in the course of the unlawful search but the court overruled the objection.

Adams appealed from the judgment of conviction to the Court of Appeals of New York, and that court in 176 N. Y. 351, 63 L. R. A. 406, approved the ruling of the trial court. From the decision of the Court of Appeals the case was taken to the Supreme Court of the United States, and that court in affirming the New York court put its decision upon the ground that the objection to the introduction of the evidence relating to the seized articles which was made for the first time in the course of the trial came too late, also saying that "weight of authority as well as reason, limits the inquiry to the competency of proper testimony and the courts do not stop to inquire as to the means by which the evidence was obtained."

Returning now to the Weeks case, it appears that an officer unlawfully broke open a door on the premises of the accused, and seized certain articles that would have a tendency to show his guilt of the offense charged against him. Before the trial the accused came into court and filed a petition, setting out the circumstances under which the property was taken, and moved the court that it be returned to him, but the trial court overruled the motion to restore to the accused the incriminating articles. Upon the trial the accused again renewed his motion and also objected to the introduction of the evidence so unlawfully obtained, but the motion as well as the objection was overruled by the court. Upon a conviction he appealed to the Supreme Court of the United States, assigning as error the adverse rulings of the trial court in respect to the matters mentioned. In passing on the case, the court said: "If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the 4th Amendment, declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in

their embodiment in the fundamental law of the land. The United States marshal could only have invaded the house of the accused when armed with a warrant issued as required by the Constitution, upon sworn information, and describing with reasonable particularity the thing for which the search was to be made. Instead, he acted without sanction of the law, doubtless prompted by the desire to bring further proof to the aid of the government, and under color of his office undertook to make a seizure of private papers in direct violation of the constitutional prohibition against such action. Under such circumstances, without sworn information and particular description, not even an order of court would have justified such procedure; much less was it within the authority of the United States marshal to thus invade the house and privacy of the accused.''

And further said that: ''We therefore reach the conclusion that the letters in question were taken from the house of the accused by an official of the United States, acting under color of his office, in direct violation of the constitutional rights of the defendant; that having made a seasonable application for their return, which was heard and passed upon by the court, there was involved in the order refusing the application a denial of the constitutional rights of the accused, and that the court should have restored these letters to the accused. In holding them and permitting their use upon the trial, we think prejudicial error was committed.''

In People v. Markhausen, 204 Mich. 559, the facts were very much like those appearing in this record. Officers of the law went to the premises of Markhausen, and without a search warrant entered and searched his house, finding liquor in the cellar and at other places on the premises. The liquor so found was taken possession of by the officers and carried to and stored in one of the county buildings. After this, Markhausen, was arrested, charged with violating the liquor laws of the state, and before the case came on for trial the accused moved the court to quash the prosecution against him and return the liquor that had been seized.

These motions were sustained by the court and the prosecution appealed. In the course of the opinion, the court in affirming the action of the trial court said: ''These officers had no search warrant issued upon oath or affirmation, no search warrant of any kind. They entered the home of the defendant by command of no court, they searched his premises by virtue of no pro-

cess. They justify it, if at all, under administrative will and mandate not recognized by the Constitution, and unauthorized in a government of laws. That 'the end justifies the means' is a doctrine which has not found lodgment in the archives of this court. The search and seizure detailed in this record was an unauthorized trespass and an invasion of the constitutional rights of this defendant.

"These rights of the individual in his person and property should be held sacred, and any attempt to fritter them away under the guise of enforcing drastic, sumptuary legislation (no matter how beneficial to the people it may be inclined to be), must meet with the clear and earnest disapproval of the courts." To the same effect State v. Sheridan, 121 Iowa 164.

It will thus be seen that one line, and the majority, of cases hold that however unlawful the methods by which the evidence is obtained it will be admitted, if otherwise competent, and acting upon this theory, rule that evidence secured by officers in the course of an illegal search is competent, some of them resting this practice on the ground that the court on the trial of the case will not stop to inquire how competent evidence was obtained, and others say in effect that the criminal has no right to question the manner in which competent evidence is secured.

The opinions of the courts holding these views are entitled to the highest respect, and we will set out at some length the reasons that have influenced us not to adopt them.

Reutrning now for a moment to the facts of this case for the purpose of making plain our position, it stands admitted that the evidence offered on the trial and to the introduction of which objection was then made, was obtained in an unlawful way by a county officer charged with the duty of giving complete obedience to the Constitution and laws of the state. This officer in violation of the Constitution and in disregard of the statute pointing out the way in which premises might be searched took the law into his own hands, invaded the premises of and went into the buildings of the suspected offender, and without asking or obtaining his consent proceeded to and did search for and find the liquor that was seized.

On these facts the question presented is: will courts established to administer justice and enforce the laws of the state receive, over the objection of the accused, evidence offered by the prosecution that was admittedly

obtained by a public officer in deliberate disregard of law for the purpose of securing the conviction of an alleged offender?

In other words will courts authorize and encourage public officers to violate the law and close their eyes to methods that must inevitably bring the law into disrepute in order that an accused may be found guilty? Will a high court of the state say in effect to one of its officers that the Constitution of the state prohibits a search of the premises of a person without a search warrant, but if you can obtain evidence against the accused by so doing you may go to his premises, break open the doors of his house and search it in his absence, or over his protest if present, and this court will permit the evidence so secured to go to the jury to secure his conviction?

It seems to us that a practice like this would do infinitely more harm than good in the administration of justice. That it would surely create in the minds of the people the belief that courts had no respect for the Constitution or laws, when respect interfered with the ends desired to be accomplished. We cannot give our approval to a practice like this. It is much better that a guilty individual should escape punishment than that a court of justice should put aside a vital, fundamental principle of the law in order to secure his conviction.

In the exercise of their great powers courts have no higher duty to perform than those involving the protection of the citizen in the civil rights guaranteed to him by the Constitution, and if at any time the protection of these rights should delay or even defeat the ends of justice in the particular case, it is better for the public good, that this should happen than that a great constitutional mandate should be nullified.

It is trifling with the importance of the question to say, as some courts have said, that the injured party has his cause of action against the officer and this should be sufficient satisfaction. Perhaps so far as the rights of the individual are concerned this might answer, but it does not meet the demands of the law abiding public, who are more interested in the preservation of fundamental principles, than they are in the punishment of some petit offender.

In this connection and before closing this branch of the case we must add the weighty and pertinent words of Justice Holmes, speaking for the Supreme Court of the United States, in Silverthorn Lumber Company v. United States, U. S. — Law Ed. (L. R. A., Advance

Sheets of 1920, p. 209); in that case officers of the United States without a "shadow of authority went to the office of the company and made a clean sweep of all the books, papers and documents found there. An application was made as soon as might be to the district court for a return of what thus had been taken unlawfully." This motion was opposed by the district attorney, and the district court ordered a return of the originals but retained photographs and copies.

After this, the lumber company was summoned to produce the originals and upon its refusal it was fined for contempt of court and one of the owners of the company ordered to be imprisoned until he should purge himself of the contempt, which consisted in his refusal to produce the original books and papers that had been unlawfully taken and returned after copies had been made.

In reversing the judgment of contempt Justice Holmes said: "The government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its rights to avail itself of the knowledge obtained by that means which otherwise it would not have had.

"The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession, but not any advantages that the government can gain over the object of its pursuit by doing the forbidden act. Weeks v. United States, 232 U. S. 383, 58 L. Ed. 652; L. R. A. 1915B 834, 34 Sup. Ct. Rep. 341, Ann. Cas. 1915C 1117, to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead of one. It reduces the 4th Amendment to a form of words. 232 U. S. 393. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the govern-

ment's own wrong cannot be used by it in the way proposed."

And also what was said by Judge Cooley in his Constitutional Limitations, p. 374: "The warrant is not allowed for the purpose of obtaining evidence of an intended crime, but only after lawful evidence of an offense actually committed. Nor even then is it allowable to invade one's privacy for the sole purpose of obtaining evidence against him, except in a few special cases where that which is the subject of the crime. is supposed to be concealed, and the public or the complainant has an interest in it or in its destruction. Those special cases are familiar and well understood in the law. Search warrants have heretofore been allowed to search for stolen goods, for goods supposed to have been smuggled into the country in violation of the revenue laws, for implements of gaming or counterfeiting, for lottery tickets or prohibited liquors kept for sale contrary to law, for obscene books and papers kept for sale or circulation, and for powder or other explosive and dangerous material so kept as to endanger the public safety. A statute which should permit the breaking and entering a man's house, and the examination of books and papers with a view to discover the evidence of crime, might possibly not be void, on constitutional grounds in some other cases; but the power of the legislature to authorize a resort to this process is one which can properly be exercised only in extreme cases, and it is better oftentimes that crime should go unpunished than that the citizen should be liable to have his premises invaded, his desks broken open, his private books, letters, and papers exposed to prying curiosity, and to the misconstructions of ignorant and suspicious persons; and all this under the direction of a mere ministerial officer, who brings with him such assistants as he pleases, and who will select them more often with reference to physical strength and courage than to their sensitive regard to the rights and feelings of others. To incline against the enactment of such laws is to incline to the side of safety. In principle they are objectionable; in the mode of execution they are necessarily odious; and they tend to invite abuse and to cover the commission of crime. We think it would generally be safe for the legislature to regard all those searches and seizures 'unreasonable' which have hitherto been unknown to the law, and on that account to abstain from authorizing them, leaving the parties and the public to the accustomed remedies."

Rejecting for the reasons stated the rule laid down in State v. Flynn, *supra,* and other like cases, we hold that evidence obtained by an officer in the course of an unlawful search is incompetent against the accused.

This conclusion leaves remaining the question whether the accused may challenge the competency of this character of evidence, when it is offered in the course of the trial, or must he in order to have it excluded move for a return of the articles unlawfully taken and make his objection to the introduction of the proposed evidence before the trial begins.  It will be noticed that the Supreme Court of the United States in the Weeks case, and the Michigan court in the Marxhausen case, held in effect that the motion to return the seized articles and objection to the introduction of the evidence found in the unlawful search must be made before the commencement of the trial, and that it would be too late to question the competency when offered in the progress of the trial.

This practice so far as our information goes was first approved by the Supreme Court of the United States in the Weeks case, and we have such high respect for the opinions of that great court that it is embarrassing to appear in the attitude of criticizing its views or declining to follow them.  But we find ourselves unable to approve this practice, first, because it is entirely unknown to the practice in this state, and besides, does not seem to us to be based upon sound reasons.  In our practice the proper time, and the only time, in which objection can be made to the introduction of evidence by the mouth of witnesses is when it is offered during the trial, and we cannot think of any good reason why this practice should not obtain in a case like the one we are now considering.

We confess our inability to appreciate the force of the reasoning that has resulted in the adoption of the rule that an exception to the general practice should be made in cases like this on the ground that if objection to the introduction of the evidence unlawfully obtained was permitted to be first made when it was offered in the course of the trial the result would be to delay unnecessarily the trial of the case and require the court to go into a collateral issue for the purpose of determining whether the evidence offered had been lawfully or unlawfuly obtained.

It is a matter of common experience in the practice of law that in almost every jury trial the court must occasionally stop for a time to pass on the competency of evidence to which objection is made for the purpose of

considering the question raised; and, in some cases, as for example where a dying declaration is offered in a homicide case and objection is made to its competency, it is the general practice for the court to hear away from the jury the evidence relating to the declaration for the purpose of determining whether it should be admitted. In the trial of other cases such as burglary, arson, robbery and embezzlement, evidence of other crimes committed by the accused is often admissible against him, although evidence of this nature may bring into the case collateral issues. Morse v. Commonwealth, 129 Ky. 294. And we do not quite understand how objection to evidence on the ground that it was unlawfully obtained would unreasonably delay the trial of the case any more so than would an objection made to other important evidence; or how it would inject into the case a collateral issue that would take more time to dispose of than would be required in the disposition of questions involving collateral issues that come up in the trial of almost every important case.

Certainly, when it was made to appear without dispute, as in this case, that the officer searched the premises without a search warrant, it would not unreasonably delay the trial of the case to make the objection when the evidence was offered and have the court then determine as a matter of law the competency of the evidence. Nor would it put into the case a collateral issue of any kind. But if there should be a dispute as to whether the search was lawfully made, the court could and should easily and speedily ascertain the truth and determine the competency of the evidence by hearing away from the jury the facts that would enable it to pass on the question.

With the greatest respect for the courts holding that the objection must be made before the trial begins, we feel compelled to say that this practice is put on very narrow and to our minds untenable grounds.

Upon mature consideration we are well satisfied that the general rules of practice prevailing in this state should apply in cases like this, and accordingly hold that seasonable objection was made to the introduction of the evidence, and that all evidence discovered in the course of the unlawful search should have been excluded from the jury.

We are also of the opinion that the motion to return the liquor seized by the officer was made in proper time, and should have been sustained, although we may further say that the motion might have been made at any time

during the trial after it was made to appear that it had been taken in the course of an unlawful search. Property that is unlawfully taken by an officer in the course of an unlawful search and seizure, and that is in the custody of the court for the purpose of being used as evidence against the accused, or for the purpose of being destroyed, should be returned to the owner by order of the court, so that the constitutional rights of the citizen may be protected and the status of the parties be restored to the position they occupied before the unlawful search and seizure were made. But, excluding this evidence, we think there was sufficient evidence to take the case to the jury.

Wherefore the judgment is reversed with directions to the lower court to enter an order restoring to the possession of Mrs. Youman, the wife of Roy Youman, the whiskey in the possession of the court, and for further proceedings not inconsistent with this opinion.