## Commonwealth v. Larkin, Jr.

*Liquor law—Searching truck without warrant—Evidence.*

1. A truck cannot be seized and searched for liquor by officers of the law without a warrant authorizing them to do so.

2. The fact that the defendant, who was the driver of the truck, made no objection to the seizure is immaterial where it appears that he was deaf and that he owned neither the truck nor its contents.

3. Where the only evidence of a violation of the liquor laws is such as was derived from the analysis of a cereal beverage taken in a truck seized and searched without a warrant, the court will order such beverage to be returned to the defendant prior to the trial and direct the district attorney not to use such evidence at the trial.

Petition for the return of cereal beverage unlawfully taken from the defendant. Q. S. Schuylkill Co., May T., 1923, No. 408.

*Cyrus W. Palmer,* District Attorney *(M. H. Spicker,* Deputy District Attorney, with him), for Commonwealth.

*Roscoe R. Koch,* for defendant.

KOCH, J., June 11, 1923.—The petitioner shows that on March 8, 1923, while he was driving a truck in Schuylkill County, he was stopped by State policemen, and a cask of cereal beverage was removed from said truck by said policemen without the petitioner's permission or consent and was taken away by them; that when the seizure occurred, the State policemen had no warrant for the arrest of Thomas Larkin, Jr., for violating the act relating to intoxicating liquor, approved May 5, 1921, P. L. 407, and had no search warrant authorizing the search and seizure of the truck or of any of its contents; that, subsequently to said date, a warrant was issued on the sworn information of a lieutenant of the State Police, charging the petitioner with the unlawful possession and transportation of intoxicating liquor; that the only evidence upon which the prosecution was brought was such as was derived from the seizure and an analysis of the said cereal beverage which had been unlawfully seized; that the seizure was unlawful, in that *(a)* the search and seizure were not founded upon a search warrant as required by law; *(b)* that the search and seizure were completed before the swearing of the information charging the crime; *(c)* that the search and seizure were for the purpose of securing evidence to be used as the basis of a criminal prosecution which was not begun until after such search and seizure; and *(d)* that, under the law of Pennsylvania, there could have been no valid and legal search warrant issued at that time.

The petitioner further alleges that the district attorney has prepared an indictment based upon the information returned in this case by the committing magistrate, and he avers that the evidence obtained in the manner aforesaid is to be used by the district attorney in presenting the case before the grand jury, and, in the event of finding a true bill, also before a petit jury to try the case. The petitioner, therefore, prays the court to direct the district attorney to return to the defendant the cask or keg, and all cereal beverage therein contained at the time of the said search and seizure, and all samples taken therefrom, whether for analysis or for any use whatever, and further prays us to refuse to permit the district attorney to use, or to attempt to use, as evidence before the grand jury, or a petit jury, the said keg and contents, or any part of the same, including any chemical analysis procured by the Commonwealth or its officers during the time the said keg and its contents have been in the hands of the Commonwealth or its officers, and any other evidence growing out of the illegal seizure and holding of the same.

The petition has not been formally answered, but it was agreed at the time set for hearing and argument that, after the policemen had stopped the truck, the cask of cereal beverage was taken without the defendant's objection. The defendant is very deaf, and neither the truck nor its contents belonged to him.

The Declaration of Rights, which compose the 1st article of the Constitution of this State, provides, in the 8th section, that "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." The 9th section provides, *inter alia*, that "In all criminal prosecutions, the accused . . . cannot be compelled to give evidence against himself, nor can he be deprived of his . . . property unless by the judgment of his peers or the law of the land."

Ever since the adoption and ratification of the so-called Prohibition Amendment to the Constitution of the United States, and the enactment of laws by Congress and by the various states to enforce its provisions, some well-meaning but overzealous persons have seemed to think and act as though the rights of personal security theretofore guaranteed by the Constitution of the United States, as well as by the Constitution of every state in the Union, irrespective of when it was written, have been completely eradicated from the palladium of our liberties. And the pronouncements of the highest courts in the land to the contrary have been apparently unheard, for they certainly have been too often and too persistently unheeded.

With writs of assistance, men did, before the Revolution, just such things as some people think they may do now, even without writs of assistance or without any other written form of warrant. Writs of assistance were one of the irritating causes that inflamed the minds of our forefathers until they declared their independence of all forms of tyrannical government and united themselves in eight years of sanguinary struggle, so that they could freely write as some of their own fundamental laws those which are quoted above. These fundamental laws are intolerant of every form of unreasonable search and seizure, and of every argument or pretence that opposes the doctrine of individual security in one's person, his home, his effects and his property. The temptation to disregard those wise provisions, which are of the very woof and warp in the frame of our Government, sometimes takes a strong hold on the minds of people who momentarily forget themselves in their overzealous prosecution of what they deem a righteous cause, and if they could not be held in check under that inflexible instrument known as the Constitution, they might unwittingly weaken and, perhaps, destroy it.

More than a hundred years ago, one Joseph Conner, of Northumberland County, received from the President Judge of that district a warrant, based only upon common rumor and report and unsupported by oath or affirmation, for the arrest of Jacob Langs for uttering counterfeit notes, but refused to serve it, and was indicted and convicted for neglect of duty in the premises. The Supreme Court of this State, then composed of three of the wisest judges that have ever sat in it, reversed the judgment on the ground that the warrant was violative of the Constitution, and, therefore, illegal: Conner *v.* Com., 3 Binney, 38.

When the State policemen, panoplied, as they always are on duty, stopped and detained the defendant with the intent of investigating his truck and procuring any part of its contents, the act was one of false imprisonment. In United States *v.* Slusser, 270 Fed. Repr. 818, the court said: "An unlawful

3 D. & C.

search cannot be justified by what is found. A search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor. It was against such prying, on the chance of discovery, that the constitutional amendment was intended to protect the people.'

The well considered case of Com. *v.* Kekic, 26 Dauphin Co. Reps. 147, decided April 30, 1923, condemns a search and seizure made with a show of force, but without a warrant issued in accordance with law, and it may be read with profit by those concerned with the enforcement of prohibition laws.

In the case of Com. v. Chivinski, No. 145, March Term, 1923, and seven other cases which were tried together, counsel for the defendants applied to the court to direct the return to the defendants of their property which was to be used as evidence against them, and which had been taken from their premises without their consent by State policemen when they made searches without a warrant for either the arrest of the defendants or for a search of their premises. The district attorney opposed the application, and it was denied by our brother Berger, who presided at the trials, without prejudice, however, and with leave to the defendants to raise the same question upon a motion to strike out the testimony after hearing. In due course, upon motion to strike out the incriminating evidence as shown by said property, the motion was allowed and acquittals of the defendants were directed by the court.

If the defendant did not object, or even if he consented, to the removal of the cask from the truck, that fact does not deprive him of his constitutional rights under the circumstances. As the cask did not belong to him, how could he consent to its being taken and appropriated by the policemen? In United States *v.* Rembert, 284 Fed. Repr. 996, 998, the court said: "It must be premised that where an officer politely and decently, without physical threat, has assumed to act in his official capacity, he is acting *de facto*, if not *de jure*, and a peaceful citizen should not forcibly resent the action, even though he knows the officer is, as to the act, greatly exceeding his authority, resting confidently upon the belief that this submission will not impair any of his constitutional rights; for, as the courts have repeatedly held, such action will not be taken to be a consent to an unlawful search or arrest, but merely a peaceful submission to officers of the law: United States *v.* Slusser (D. C.), 270 Fed. Repr. 818; Youman *v.* Com., 189 Ky. 152, 224 S. W. Repr. 860, 864, 13 Am. Law Reps. 1303; Amos *v.* United States, 255 U. S. 313, 317, 41 Sup. Ct. 266, 65 Law Ed., 654.

"Any other course on the part of the citizen would place him in the difficult and dangerous position of undertaking to protect by force the rights which, in his opinion, the officers are seeking to impair, when it may turn out that the officer in fact has authority, and his action may in fact be legal. This principle, that the courts of the United States will not put the citizen to the alternative of contesting by force with officers, or waiving his constitutional rights, runs throughout the Federal decisions, and gives character and meaning to their emphatic holding that evidence illegally obtained cannot be used, and that the submission of a citizen to an officer cannot deprive him of his constitutional rights, unless the evidence clearly shows that the submission was really voluntary and with a desire to invite a search and not done merely to avoid resistance."

Again, on page 1007: "Officers should be very loath to interfere with the rights of citizens, and should not arrest on mere suspicion, and wherever an arrest and consequent search of a person or vehicle is made without warrant, the Government must be prepared to show, if it expects the evidence to be admissible, that the arrest and search was not a mere exploratory enterprise

for the purpose of discovery, but was based upon a sincere belief, with reasonable grounds therefor, that an offence had been committed by the person or vehicle arrested."

The Commonwealth has not shown a single circumstance to justify the seizure of the cask in this case. At best, the circumstances show that the officers simply took a chance of finding a beverage with an alcoholic content in excess of the legal amount, and this with an intent of bringing a prosecution if they found the law violated. In other words, this was a mere exploration for evidence without even a suspicion that the defendant was guilty of a crime. No crime had been discovered by the police when they stopped the defendant, nor have the police shown that they had a reasonable belief, on reasonable ground, that a crime was being committed by him. They, therefore, had no right to overawe the defendant and cause him to yield the custody of anything in his temporary possession, and it is their duty to return what they have unlawfully taken.

The prayer of the petitioner is granted, and the district attorney and the State policemen are ordered to return to the defendant the cask, or keg, and all the cereal beverage therein contained at the time of the search and seizure, and all samples taken therefrom, whether for analysis or for any other use whatever, and the district attorney is forbidden to use, or to attempt to use, as evidence before the grand jury, or a petit jury, the said keg and contents, or any part of the same, including any chemical analysis thereof.

From M. M. Burke, Shenandoah, Pa.