## SAMMY KUTZ v. STATE.

No. A-9645.   April 4, 1940.
(101 P. 2d 268.)

Willis R. Stark, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis R. Morris, Co. Atty., and Phil E. Daugherty, Asst. Co. Atty., both of Oklahoma City, for the State.

BAREFOOT, J. The defendant, Sammy Kutz, was charged in the court of common pleas of Oklahoma county with the crime of having unlawful possession of intoxicating liquor; was tried, convicted, and sentenced to pay a fine of $250, and serve a term of six months in the county jail of Oklahoma county, and has appealed.

From a reading of the record in this case, and the assignments of error, it is only necessary to consider one of the assignments.

The evidence reveals that the defendant, Sammy Kutz, was proprietor, and was operating a place known as the "Mistletoe Tavern", at 30th street and South Eastern avenue, in Oklahoma City. On the 21st day of August, 1938, four deputy sheriffs of Oklahoma county went to this place of business of defendant and searched the same; two of the officers going to the back entrance and the other two entering the front door. The officers found a box in one of the back rooms and requested defendant to turn over the key and unlock the same, and when he did so there was found therein 58 pints of tax-paid liquor.

The officers who made this search were experienced officers, they were acquainted with the premises to be

searched, and some of them had searched it many times prior thereto. They went directly to the place for the purpose of searching the same, yet knowing the premises, and knowing that they intended to search it, they made no attempt to procure a search warrant, as the law required, but this search was made wholly without a search warrant. The framers of the Constitution of the United States, and of this state, and the Legislature of this state, may have made a mistake when they wrote it into the Constitution and laws that it was necessary to secure a search warrant before the premises of a citizen could be searched, but they wrote it there as a result of the sound experience of the ages, and it was written there, not only for the protection of the citizens of this country that they might be secure in their homes and places of business, but also for the protection of the officer who conducted the search. A search such as this gives the officer the benefit of the local advertisement that he made a search and found the whisky, but it is in straight defiance of the law, and a burden upon the taxpayers of the county in the prosecution of the same.

This court, from the time of its existence to the present time, and in common with the decisions of the Supreme Court of the United States, and all other states, has held that a search of the premises, under conditions as here existed, cannot be made without the securing of a search warrant.

The Constitution of the United States, Oklahoma Statutes Annotated, Constitution, Amend. article IV, provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or af-

firmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Constitution of Oklahoma, Okla. Stats. Anno. Constitution, article II, section 30, is in identical terms.

The Legislature of this state has provided the grounds upon which search warrants may be issued. Okla. Stats. 1931, secs. 3222, 2635, 22 Okla. St. Ann. § 1222, and 37 Okla. St. Ann. § 84. This court did not enact these constitutional and statutory provisions. It is our duty, under our oaths, to enforce them the same as the other provisions of the Constitution and statutes. There is nothing which permits a peace officer to violate its positive terms, and when he does so he is not only violating his duty and oath of office, but he is throwing his county into useless and unnecessary expense under the guise that he is enforcing the law. His excuse to the public that he cannot enforce the law by reason of "technical decisions" of the courts may meet with public favor, but should be of little comfort to his own conscience. These decisions are not technical, but are based upon positive provisions of the Constitution and statutes, which are the result of the thought and wisdom of the best minds of the ages. They are for the protection of the citizens of this state, and although by their terms some guilty person may escape, they stand as the bulwark and defense to the innocent, against the unwarranted search and seizure of their property by those who would not, or do not, desire or care to comply with the positive terms of the Constitution and statutes of this state.

In the case of Hess v. State, 84 Okla. 73, 202 P. 310, 314, in a decision by Judge Kennamer, who is now a federal district judge for the Northern District of Oklahoma, said:

"In the case of People v. Marxhausen, 204 Mich. 559, 171 N.W. 557, 3 A.L.R. 1505, the Supreme Court of Michigan had before it a case where the officers went to the premises of Marxhausen without a search warrant, searched his house, and secured a quantity of liquor, which liquor was carried to a county building and stored. Marxhausen was prosecuted for a violation of the liquor laws, and before the case came on for trial moved the court to quash the prosecution against him and return the liquor that had been seized. The motions were sustained by the court, and the prosecution appealed. In affirming the action of the trial court the court said:

" 'These officers had no search warrant issued upon oath or affirmation; no search warrant of any kind. They entered the home of defendant by command of no court; they searched his premises by virtue of no process. They justify, if at all, under administrative will and mandate not recognized by the Constitution, and unauthorized in a government of laws. That "the end justifies the means" is a doctrine which has not found lodgment in the archives of this court. The search and seizure detailed in this record was an unauthorized trespass and an invasion of the constitutional rights of this defendant. These rights of the individual in his person and property should be held sacred, and any attempt to fritter them away, under the guise of enforcing drastic sumptuary legislation (no matter how beneficial to the people it may be claimed to be), must meet with the clear and earnest disapproval of the courts.' * * *

"In the case of Amos v. United States, 255 U. S. 313, [316], 41 S. Ct. 266, 65 L. Ed. [654], the Supreme Court of the United States in the first syllabus [paragraph] announced the following rule of law:

" 'Property seized in the search of a private home by government agents without warrant of any kind, in plain violation of Const. U. S. Amends. 4 and 5, should have been returned to the owner on his petition, presented by him after the jury in a criminal prosecution against him was impaneled, but before any evidence was offered.'

"It appears to us that it would place the courts organized and established for the purpose of enforcing the laws of the state in a most ridiculous position to permit a judgment or decree to stand, the very foundation of which is based upon a violation of the law and a disregard for the constitutional protection guaranteed to every citizen within the state.

"Can it be maintained that a citizen may be deprived of his property by a proceeding which has had its inception in an open and flagrant violation of the laws of the state by a sworn officer, whose duty it is to uphold and enforce the law?

"Can it be said that constitutional government any longer exists in this country if the citizen and his property are subject to seizure at any moment's time without the authority or mandate of any court, but merely upon the initiative and authority of an officer acting without the authority or process of any court? In the case of Youman v. Commonwealth, supra [189 Ky. 152, 224 S.W. 860, 13 A.L.R. 1303], we desire to direct attention to the able and pertinent statement of Chief Justice Carroll of the Supreme Court of Kentucky, which is as follows:

" 'On these facts the question presented is: Will courts established to administer justice and enforce the laws of the state receive, over the objection of the accused, evidence offered by the prosecution that was admittedly obtained by a public officer in deliberate disregard of law for the purpose of securing the conviction of an alleged offender? In other words, will courts authorize and encourage public officers to violate the law, and close their eyes to methods that must inevitably bring the law into disrepute in order that an accused may be found guilty? Will a high court of the state say, in effect, to one of its officers that the Constitution of the state prohibits a search of the premises of a person without a search warrant, but if you can obtain evidence against the accused by so doing you may go to his premises, break open the doors of his house and search it in his absence, or over his protest if present, and this court will permit

the evidence so secured to go to the jury to secure his conviction?

" 'It seems to us that a practice like this would do infinitely more harm than good in the administration of justice; that it would surely create in the minds of the people the belief that courts had no respect for the Constitution or laws, when respect interfered with the ends desired to be accomplished. We cannot give our approval to a practice like this. It is much better that a guilty individual should escape punishment than that a court of justice should put aside a vital, fundamental principle of the law in order to secure his conviction. In the exercise of their great powers courts have no higher duty to perform than those involving the protection of the citizen in the civil rights guaranteed to him by the Constitution, and if at any time the protection of these rights should delay or even defeat the ends of justice in the particular case, it is better for the public good that this should happen than that a great constitutional mandate should be nullified. It is trifling with the importance of the question to say, as some courts have said, that the injured party has his cause of action against the officer, and this should be sufficient satisfaction. Perhaps, so far as the rights of the individual are concerned, this might answer; but it does not meet the demands of the law-abiding public, who are more interested in the preservation of fundamental principles than they are in the punishment of some petty offender.' "

There are certain well-defined exceptions as to when a search can be made without the necessity of a search warrant, but the facts in this case do not come within those well-defined exceptions. The officers making this search should have, and surely did, know of these decisions. The court and the assistant county attorney were familiar with the same, and the court should have sustained a demurrer to the evidence in this case. Aside from a failure to secure the search warrant, the court permitted the officers, while testifying, to say:

"Q. And what business was he engaged in at the time you went there? A. Running this Mistletoe Tavern; it is a beer joint and bootlegging joint. * * * Q. Yes, tell us what he used it for on that day, if you know? A. Well, that is where everybody buys whisky in that end of town."

An objection was made as not being responsive and prejudicial to defendant. The court overruled this objection and permitted it to go to the jury. On other occasions objections to questions and answers such as this were made in the presence of the jury. On some occasions objections to them were sustained, on other occasions they were overruled. Evidence of this character is clearly inadmissible under the holdings of this court. Notwithstanding the fact that the officers did not have a search warrant it would be necessary to reverse this case by reason of the introduction of this evidence over the objection of defendant.

In this case the evidence clearly shows that defendant was engaged in the liquor business. Had the officers made any effort to comply with the settled law of this state, as written in the Constitution and statutes, it would not be necessary to reverse the same, but it would be affirmed, and the defendant forced to suffer the punishment which he deserved for a violation of the law. But no matter how guilty, under our system of government, he is entitled to a fair and impartial trial as guaranteed under the Constitution and laws of this state. This he did not receive.

For the reasons above stated, the judgment of the court of common pleas of Oklahoma county is reversed, and the defendant ordered discharged.

DOYLE, P. J., and JONES, J., concur.