# EISENSTEIN *v.* STATE
[No. 6, October Term, 1952.]

594

*Decided November 11, 1952.*

*Motion for rehearing and stay of proceedings, filed December 6, 1952, denied and opinion modified December 12, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*William J. O'Donnell,* with whom was *Albert A. Levin* on the brief, for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom was *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *William C. Rogers, Jr., Assistant State's Attorney,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment entered on a verdict, rendered by a jury, finding the appellant guilty of having in his possession lottery paraphernalia.

This lottery paraphernalia was obtained by the officers from the person of the appellant without a search warrant. The appellant claims that the court erred in refusing to permit the appellant to become a witness in his own behalf, out of the presence of the jury, for the limited purpose of testifying to facts and circumstances concerning his arrest and the seizure of his papers. In view of the words "at any time" used in the Acts of 1939, Chapter 749, Section 259A, now Code, 1951, Article 27, Section 328, we held in *Smith v. State,* 191 Md. 329, 334, 62 A. 2d 287, 5 A. L. R. 2d 386, that a hearing on a motion to quash a search warrant might be heard either before or during the trial. The appellant relies strongly on the following quotation from *Miller v. State,* 174 Md. 362, at page 367, 198 A. 710 at page 713: "If it be assumed, by analogy to those cases in which the victim of an illegal search and seizure seeks the return of material taken in the course thereof,

that the burden was upon the defendant to show the illegality of the seizure, and consequently, in connection with his objection, to offer proof of facts sufficient to condemn the seizure as illegal, nevertheless these facts would be *prima facie* sufficient to meet that burden, especially since the defendant had made a motion to suppress the evidence before the trial, and the court clearly indicated that he understood that the objection was based upon the ground that the seizure was illegal. The mere fact that the preliminary motion was inconsistent with the established practice in this state did not prevent its indicating the ground of defendant's objection. *Sugarman v. State,* 173 Md. 52, 195 A. 324, 326. The issue stated will therefore be accepted as sufficiently presented by the exceptions." Appellant contends that "this holding certainly seems to be sufficient to have permitted the appellant having contested the legality of his arrest and the legality of the seizure of his papers in the trial, to have offered evidence on this question in order to meet the burden imposed upon him." We agree that the appellant has the right to present evidence on the question of the legality of the seizure but we find nothing in the language above quoted to hold just when this evidence should be offered, or that it should be offered out of the presence of the jury. As pointed out by the appellant, collateral inquiry out of the presence of jury may be permitted when a confession is attacked as improperly obtained *Smith v. State,* 189 Md. 596, 606, 56 A. 2d 818. However, it has never been held in this State that evidence on the question of legality of the seizure of evidence in a lottery case should be taken out of the presence of the jury, although there is some authority to the contrary. *Youman v. Commonwealth,* 189 Ky. 152, 224 S. W. 860, 868, 13 A. L. R. 1303. Whether the defendant could take the stand for the limited purpose of contesting the legality of the arrest, without subjecting himself to cross-examination on the whole case, is a question not properly presented here and on which we express no opinion.

It is provided by Code (1951) Article 27, Section 368, that in all prosecutions under the Narcotic Drug Statutes, the provisions of Section 5, Article 35, (the Bouse Act) shall not apply. The appellee claims that because of the testimony in this case that the officers were investigating a narcotic violation, Article 35, Section 5, *supra,* the so-called Bouse Act does not apply to the search here. With this contention of the appellee we do not agree. The instant case is not one in which the appellant is being prosecuted under the narcotic drug statutes, but under the lottery statutes. It was said in *State Ex Rel. Beard v. Warden,* 193 Md. 715, 717, 67 A. 2d 236: "The illegal possession of narcotics is made unlawful by section 329 of Article 27, Code 1939, and penalty therefor is prescribed in section 352 of that Article. It is a misdemeanor and insofar as evidence resulting from an illegal search and seizure is concerned, section 5, Article 35, Code 1939 governs prosecutions for misdemeanors. This section, however, is specifically made inapplicable *to prosecutions under the state narcotic laws by section 351 of Article 27 of the [1939] Code."* (Italics supplied).

Code 1951, Article 35, Section 5, commonly known as the Bouse Act, *supra,* provides that no evidence in the trial of a misdemeanor shall be admissible when it shall have been procured in consequence of any illegal search or seizure or of any search and seizure prohibited by the Declaration of Rights of this State. If the officers were lawfully in the vestibule of the apartment house when they observed the appellant with the lottery tickets, although without a warrant, they had the right to arrest the appellant, search his person and seize incriminating articles connected with the crime found upon his person or within his use and immediate control or possession. *Callahan v. State,* 163 Md. 298, 301, 162 A. 856; *Hill v. State,* 190 Md. 698, 701, 59 A. 2d 630; *Rucker v. State,* 196 Md. 334, 338, 76 A. 2d 572, 573, 574; *Kershaw v. State,* 199 Md. 135, 139, 85 A. 2d 783, 785, 786.

, The testimony for the purposes of this case was as follows: On October 1, 1951, Lieutenant Byrne and Officer Hogan of the Baltimore City Police Department, approached the entrance of 1129 Maryland Avenue, Baltimore. Lieutenant Byrne had information that one Drake, who was suspected of violations of the narcotic laws, was in this building. Immediately adjoining was 1127 Maryland Avenue where appellant conducted his shop and showroom in the coin machine business. A mezzanine floor ran across both 1129 and 1127, which was used by the appellant as an office. There was a door from this mezzanine into 1127. The premises, 1129, is a small apartment house, containing three apartments, an entrance hall or vestibule, and stairways. The entrance door to this apartment building was of wood, with 7 or 9 panes of glass, covered with a thin white lace curtain. Over the top of the door was a large glass transom, without any shade or curtain. When asked on cross-examination whether there were any door-bells on the entrance door, Lieutenant Byrne replied: "There were three, I think, two or three, but it seems that some portion of it had been removed. There were a few name plates there but I couldn't make them out." He said he didn't see any mailbox, if there was one there. When shown a picture of the door, taken on October 26, 1951, twenty-five days after the alleged offense, he said he could then see names on the doorbell. He further said the names were not there the day of the alleged offense. When asked whether he could see the names on the doorbell the day of the alleged offense, he said he could not. He said: "I did examine them, and they weren't there the day I looked at them. * * * When I looked at that doorbell I naturally looked for a doorbell, I was unable to read any names that were on there at that time." One of the photographs taken on October 26, 1951, shows a small mail box to the right of the entrance door, with three small slots therein. There was a lock on the door, but the door was unlocked.

The officers, without a search warrant, opened the entrance door and entered the vestibule. They started up the stairway of five or six steps leading to the landing. As they started up these stairs they examined some mail which had been left on a ledge in the vestibule, inside the entrance door. Not finding any mail addressed to the person for who they were searching, they resumed their walk up these steps to the landing. At that point they heard some persons running down steps, who they admitted might possibly have been children. They then proceeded up the steps to the next landing. While standing on the second step, the door in front of the officers flew open. The appellant came out, looking back over his left shoulder, shoving lottery tickets into his pocket. Lieutenant Byrne testified: "He was putting the tickets into his right hand coat pocket with his right hand, looking back over his left shoulder. * * * I could see that number, those series of numbers that I made out, that 822-25." The officer grabbed the appellant, and said: "I have got you". He caught appellant's hand in the pocket with the slips and took 25 slips away from him which slips were offered in evidence. This is the evidence which appellant contends was erroneously admitted. The officers then searched the room from which the appellant came. Although not appearing in the record, there is in the unindexed transcript the following testimony of Joseph Earl Gittings, called by the appellant. He testified on November 9, 1951, as follows: "Q. Can you tell—are there any names written alongside the doorbells on the door jamb of 1129? A. Yes, sir. Q. Would you say how long those names have been written on that door jamb alongside those doorbells? A. Yes, sir, because about seven months ago [about April, 1951,] when I started with Mr. Hilskie [evidently a nick-name for the appellant] I was in the shop and a telephone call came for a Mrs. Gray or Mrs. Shawn, I am not sure, and I went over and opened the door and hollered upstairs. The only reason I could tell they were over

there was because their name was on the name plate. Q. Did you ring the doorbell to get her? A. Yes, sir. Q. You didn't walk up there? A. No, sir. Q. I show you this photograph [taken October 26, 1951,] and ask you if it has the names you refer to and if that is the way the names were on the doorbell on that date. A. Yes, sir."

The appellant claims that the officers were trespassers in this vestibule, *ab initio.*. We cannot so find. In *Gorman v. State,* 161 Md. 700, 158 A. 903, relied on heavily by the appellants as an example of unlawful entry, the officer without a warrant pushed open a door and entered Gorman's private dwelling. Such is not the case here. The evidence here is without contradiction that on the day of the alleged offense the nameplates under the doorbells at the entrance door could not be read. The entrance door was unlocked and led to the common hallway or vestibule of an apartment house. There is no evidence here that this door was ever locked. The mail had evidently been left by the mailman on the ledge inside the vestibule. There is no testimony here that the bells operated on the day of the arrest, or whether the entrance door could ever have been unlocked from the apartments without going down to that door. From the evidence a conclusion could easily be reached tht it was the custom of everyone entering this apartment house to use this vestibule as a public entrance and that this unlocked entrance door was open to the public. If Lieutenant Byrne had opened this unlocked entrance door into the vestibule to ascertain whether it had been left unlocked by accident, and at that time had witnessed a crime being committed in his presence, the arrest therefor could hardly have been held unlawful on the grounds that the officer was a trespasser *ab initio.* It could be concluded on the question of admissibility of this evidence, that this vestibule was a public hallway. As we find no error the judgment will be affirmed.

*Judgment affirmed, with costs.*