## KEEFE v. CLARK, Federal Prohibition Agent.

## UNITED STATES v. 10,000 GALLONS OF INTOXICATING LIQUOR.

(District Court, D. Massachusetts. March 5, 1923.)

Nos. 2165, 2353.

1. **Searches and seizures ⊂⊃2—Common-law rule that seizure must be followed by appropriate action not altered by Espionage Act.**

Search and seizure at common law is not itself a complete proceeding, justifying the indefinite detention of seized property, but is the first step in a criminal or judicial proceeding for the forfeiture of the thing seized, and must be followed up by an appropriate action in court, and this rule has not been abrogated by Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212i, 10496¼a–10496¼v), providing a method for testing the legality of search and seizure at the instance of the person from whom the property is taken.

2. **Intoxicating liquors ⊂⊃250—Right to hold seized liquors depends on validity of seizure under search warrant.**

The government's right to hold liquors seized under a search warrant depends on the legality of what was done under the warrant, and disregard of constitutional rights of individuals may not be overlooked because of advantage to the government.

3. **Intoxicating liquors ⊂⊃249—Seizure of 7,000 gallons illegal under search warrant describing 450 gallons.**

The seizure of 7,000 gallons of spirits under a search warrant describing not to exceed 450 gallons, was illegal, under Const. Amend. 4, and Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212i, 10496¼a–10496¼v), requiring that property to be seized must be particularly described.

4. **Intoxicating liquors ⊂⊃257—Illegal possession no justification of illegal search and seizure.**

Illegal seizure and detention of spirits by government officers cannot be defended or justified by the illegality of the owner's possession.

5. **Intoxicating liquors ⊂⊃255—Unreasonable delay in instituting forfeiture or criminal prosecution entitles owner to return.**

The owner of liquors seized under search warrant is entitled to their return, where no criminal prosecution nor forfeiture proceeding are instituted within reasonable time, and delay of 11 months is unreasonable, and is not excused because of the pendency of the owner's petition for return of his property.

6. **Intoxicating liquors ⊂⊃139—Illegal use by others of cellar of private dwelling unauthorized by owner does not make owner's use illegal.**

The character of a cellar as part of the owner's private dwelling under the National Prohibition Act is not lost by an illegal use of the cellar by tenants or other persons, not permitted or acquiesced in by him.

At Law. Petition by Cornelius Keefe against Clarence W. Clark, Federal Prohibition Agent, for the return of intoxicating liquors seized, heard together with a petition by the United States against 10,000 gallons of intoxicating liquors, for the forfeiture of the same liquors, in which Keefe claims as owner. He having become bankrupt, his trustees appeared and maintain his petition and claim. Ordered that the liquors claimed be returned, and the petition for forfeiture dismissed.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

No. 2165:

Daniel A. Shea, of Boston, Mass., for petitioner.

Robert O. Harris, U. S. Atty., and Elihu D. Stone, Sp. Asst. U. S. Atty., both of Boston, Mass., for defendant.

No. 2353:

Robert O. Harris, U. S. Atty., of Boston, Mass.

Daniel A. Shea and Leo A. Rogers, both of Boston, Mass., for defendant.

MORTON, District Judge. These two cases were heard together. The first is a petition for the return of intoxicating liquors alleged to have been illegally seized; the second, a petition under the National Prohibition Act (41 Stat. 305) for the forfeiture of the same liquors. In the latter case a claim was filed by Cornelius Keefe as owner. He having become bankrupt pending these proceedings, his trustees have appeared and maintain his petition and his claim. The facts are as follows:

For many years preceding the matters here in question Keefe had owned a building on Dartmouth street, Boston, of which the first floor was used for store purposes and the upper part for apartments. Keefe has resided in one of the apartments for upwards of 20 years. He was formerly engaged in the liquor business in a rather extensive way, owning or being interested in three or four places where it was sold. Just before prohibition went into effect he brought together from his various places of business the liquor here in question, and acting under legal advice stored it in the cellar of the building referred to, where he lived. The place where the liquor was stored was partitioned off, and could be entered only through a locked door, the keys of which were held by Keefe. It was regarded as his personal storeroom, forming part of the apartments which constituted his "private dwelling," within section 25, tit. 2, of the act. He let his brother have a key for certain limited purposes.

Over this cellar was a grocery shop managed by Keefe's brother. The government claimed that an illegal sale of liquor was made in the shop. Thereupon, under date of January 24, 1922, a search warrant was issued by United States Commissioner Nelson upon application of Clark, a federal prohibition agent, authorizing the search of the first floor and cellar of the building in question for, as stated in the warrant, "a quantity of whisky, being about and not exceeding 50 gallons; a quantity of rum, being about and not exceeding 50 gallons; a quantity of brandy, being about and not exceeding 50 gallons; a quantity of gin, being about and not exceeding 50 gallons; a quantity of alcohol, being about and not exceeding 50 gallons; a quantity of colored alcohol, being about and not exceeding 50 gallons; a quantity of moonshine liquor, being about and not exceeding 50 gallons; a quantity of wine, being about and not exceeding 50 gallons; a quantity of ———, being about and not exceeding 50 gallons."

Under this warrant federal officers broke into Keefe's cellar and seized nearly 7,000 gallons of various wines, liquors, and cordials,

which had been stored there by Keefe as above stated. They were taken away and stored by the officers, and are still in the custody of the federal prohibition director. This was done on January 24, 1922.

Following the seizure, proceedings were promptly instituted by Keefe, attacking the validity of the warrant, and Commissioner Hayes, upon full hearing found that the warrant had been improperly obtained, and ordered that it be quashed. Keefe thereupon demanded the return of his liquors, and his demand was refused. He then, on February 12, 1922, filed a petition in this court against Clark and the federal prohibition director for the return of his liquors. See Francis Drug Co. v. Potter (D. C.) 275 Fed. 615. This petition was resisted by the defendants, and the case was referred to a special master to state the facts. His report has come in. No criminal proceedings were instituted against Keefe, and no case except the present forfeiture proceeding has been or is pending in which the liquors in question might be used as evidence or on the outcome of which the government's right to them might depend. The forfeiture proceedings were not instituted by the United States until December 21, 1922, almost 11 months after the seizure. As to the foregoing facts there is no dispute.

[1] At common law a search and seizure under legal process is not a complete proceeding in itself. It is a first step either in criminal prosecution or in judicial proceedings for the forfeiture of what has been taken; it must be followed up by an appropriate action in court of one sort or the other. Six Carpenters' Case, 8 Co. 146; Kent v. Willey, 11 Gray, 368; Russell v. Hanscomb, 15 Gray, 166; Esty v. Wilmot, 15 Gray, 168, 169; Godat v. McCarthy (D. C.) 283 Fed. 689. To hold that property may be seized and kept indefinitely by officers, without any sort of judicial proceedings, would open the door to great oppression and abuses.

Under title 11 of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212i, 10496¼a-10496¼v) a copy of the inventory of the property seized must, if demanded, be delivered to the person from whom the property was taken; if the grounds on which the warrant was issued be controverted, the judge or commissioner must take testimony in relation thereto; and if it appears that the property was not the same as that described in the warrant, or there was not probable cause for the issue of the warrant, the judge or commissioner must cause the property to be restored to the person from whom it was taken. If probable cause be found and the property was described in the warrant, it is to be retained. The complete papers in the proceedings on the warrant are to be filed with the clerk of the court having power to inquire into the matter. These sections provide a simple and direct procedure to determine the legality of the warrant and the government's right to hold the seized property; but it does not seem to me that they abrogate the common law, or relieve the prosecuting officers of the government from the necessity of following up searches and seizures by appropriate criminal or condemnation proceedings. The statute apparently assumes that if, on the warrant proceedings, the seizure is found to be lawful and justified, criminal

prosecution will be instituted, and if not, that the property will be promptly returned.

[2] That the government's right to hold the liquors depends on the legality of what was done under the search warrant was expressly decided by the Circuit Court of Appeals in Giles v. U. S., 284 Fed. 208 (opinion October 28, 1922). Possibly that decision may be inconsistent with Vachina v. U. S., 283 Fed. 35 (C. C. A. 9th Cir.), relied on by the government. Of course, I am bound by the Giles Case; but, even if I were not, it seems to me much the sounder view. Ever since the Boyd Case, 116 U. S. 635, 6 Sup. Ct. 524, 29 L. Ed. 746, it has been the law of the federal courts that advantage to the government is not an adequate reason for overlooking a disregard by its officers of the constitutional rights of an individual.

[3] Under the provisions both of the Fourth Amendment and of the Espionage Act, property which is to be seized on a search warrant must be "particularly" described. The warrant in this case was not for the seizure generally of intoxicating liquor; it specified exactly what kinds and quantities of liquors were to be seized, except for the last item of 50 gallons. The amount of each authorized to be taken was "*not exceeding*" 50 gallons—in the aggregate 450 gallons. On such a warrant the officers were not, as it seems to me, authorized to seize quantities substantially in excess of those stated. Their mandate was the warrant; it conditioned their right to enter and limited their authority; the seizure of 7,000 gallons was in direct disregard of its explicit language. No reported case covering the point has come to my attention; but Mr. Harris, in argument, referred to a similar one which arose at nisi prius in the state court while he was district attorney there, in which the commonwealth felt obliged to surrender all liquors in excess of those specified in the warrant. In my opinion the seizure of the liquors in excess of the amounts stated in the warrant was from the beginning unjustified and illegal, and I so find and rule.

[4] Nor can the government defend its rights under the illegal seizure by raising a question as to the legality of the owner's possession. Godat v. McCarthy (D. C.) 283 Fed. 689; U. S. v. Descy (D. C. R. I.) 284 Fed. 724. These decisions accord with well-considered cases in the state courts. In People v. Marxhausen, 204 Mich. 559, 171 N. W. 557, 3 A. L. R. 1505, liquor was seized from the defendant's premises without any search warrant. Although it was illegally acquired and held, the return of it was ordered. See, too, for careful opinions reaching the same result, Youman v. Commonwealth, 189 Ky. 152, 224 S. W. 860; Faulk v. State, 127 Miss. 894, 90 South. 481.

[5] There remains the question as to the government's right to retain or to forfeit the liquors specified in the warrant. This depends in the first place upon whether the failure on the part of the officers of the government to institute criminal proceedings in connection with the seizure, or to institute forfeiture proceedings against the liquor within a reasonable time, rendered the government's continued pos session illegal and unjustifiable.

It is quite clear that, after property has been seized upon a search warrant, it may be retained for a reasonable time in order to permit the proper officials to institute prosecution or forfeiture proceedings. It is for those purposes and those only that the government has the right to hold it. If, as here, no criminal proceedings are instituted, then after the expiration of a reasonable time for forfeiture proceedings the government has no further right to keep the property. Such proceedings ought to be promptly instituted. Under ordinary circumstances 11 months is certainly more than a reasonable time. In this case during most of that interval the petition brought by Keefe was pending. The government was resisting his claim and was in effect asserting a right to forfeit the liquors. But, even if it had prevailed, there was still no proceeding pending against Keefe or the liquors in which a decree of forfeiture could be entered, nor any proceeding in connection with which, and as part of which, there was a right to retain the liquor. The duty and the necessity of following up the seizure by appropriate judicial proceedings were not abrogated by Keefe's action. Notwithstanding the pendency of Keefe's petition, therefore, the government's possession of the property after a reasonable time had elapsed was unjustifiable. It does not seem to me that the subsequent institution of forfeiture proceedings operated retroactively, and legalized what had theretofore become an illegal holding. The rights under the seizure had lapsed before the forfeiture petition was brought, and were not revived by it.

[6] It is unnecessary to decide the other questions which have been argued. The view of the case which I have taken also renders it unnecessary to pass categorically upon the various exceptions to the master's report. I doubt the correctness of the rulings and findings in paragraphs 28 and 29 of the master's report. If the cellar at the time when the liquors were originally stored there formed part of Keefe's "private dwelling" within the meaning of the statute, as the master finds, that character would not, I think, be lost by an illegal use of the cellar by other persons not permitted or acquiesced in by him. The master's findings and rulings which are inconsistent with this opinion are set aside. In all other respects his report is confirmed.

Orders may be entered, directing the return of the liquors owned and claimed by Keefe, and dismissing the petition for forfeiture.